**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Benson Hill, Inc., et al.,[1] | ) ) | Case No. 25-10539 (TMH) |
| Debtor. | ) ) ) ) | (Jointly Administered) |
|  | ) | D.I. 73, 194 |

**CRUM & FORSTER'S INITIAL OBJECTION TO THE**
**SALE OF THE DEBTOR'S ASSETS INCLUSIVE OF CURE COSTS AND**
**THE PROPOSED ASSIGNMENT OF THE POLICIES**

Crum & Forster Specialty Insurance Company ("Crum & Forster") submits this initial objection (the "Objection") to the sale of the Debtors' assets, inclusive of cure costs and the proposed assignment of certain insurance policies, as proposed in the Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale ("Notice of the Possible Assumption and Assignment") (ECF No. 153) and Order (I) Approving Bidding Procedures in Connection with the Sale of the Substantially all of the Debtors' Assets; (II) Approving Procedures to Designate a Salking Horse Bidder and Provide Associated Bid Protections; (III) Scheduling an Auction for and Hearing to Approve the Sale of Substantially all of the Debtors' Assets; (IV) Approving Notice of the Respective Date, Time, and Place for an Auction and for a Hearing on Approval of the Sale; (V) Approving Procedures for the Assumption and Assignment of Certain Executory Contracts and Unexpired Lease; (VI) Approving the Form and Manner of Notice Thereof; and (VII) Granting Related Relief (the "Bid Procedures Order") (ECF No. 194), and respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases are: Benson Hill Fresh, LLC, Beson Hill Holdings, Inc., Benson Hill, Inc., Benson Hill Seeds Holding, Inc., Benson Hill Seeds, Inc., BHB Holdings, LLC and J&J Southern Farms, Inc.

**Background**

1. On March 20, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

2. On May 28, 2025, the Debtors filed the Sale Motion (ECF No. 73), which seeks, among other things, approval of bidding procedures for the sale of substantially all of the Debtors' assets.

3. On April 17, 2025, the Debtors filed a Notice of the Possible Assumption and Assignment of certain contracts, which includes the Policies (as defined below) (ECF No. 153).

4. On April 23, 2025, the Court entered the Bidding Procedures Order (ECF No. 194). The Order includes a "Summary of Important Dates," which sets May 8, 2025, at 4:00 p.m. (ET) as the deadline to file an initial sale objection, including any cure and assignment objections. The Auction is scheduled for May 15, 2025.

5. As of the Petition Date, Debtor Benson Hill, Inc. held two insurance policies issued by Crum & Forster: (i) a General Liability Policy (Policy No. GLO-125576) that renewed for a 12-month term on March 1, 2025 (the "GL Policy"), and (ii) an Environmental Package Policy (Policy No. EPK-148055) that renewed for a 12-month term on June 1, 2024 (the "Environmental Policy," and together with the GL Policy, the "Policies").

6. The GL Policy has a $10,000.00 deductible and the Environmental Policy has a $5,000.00. The Debtors may incur and owe Crum & Forster deductible obligations on a post-petition basis as they come due.

7. The GL Policy is subject to a year-end audit, which may result in the Debtor owing additional premiums or, alternatively, a refund being due. Any refund would be subject to Crum & Forster's rights of setoff and recoupment.

8. In addition, the prior year's general liability policy (GLO-104148) is currently under audit, which may result in the Debtor owing additional premiums or, alternatively, a refund being due. Any refund would be subject to Crum & Forster's rights of setoff and recoupment.

9. The Policies expressly prohibit transfer of the Debtors' rights and obligations without the written consent of Crum & Forster.

10. The Policies were issued to Benson Hill based on a risk profile unique to that Debtor. Crum & Forster does not consent to assignment of the Policies at this time.

11. The Policies are listed in the Schedules of Assets and Liabilities filed by Benson Hill as executory contracts (ECF No. 255). *See* Schedules G, §§ 2.20 and 2.21.

**Objection**

12. Crum & Forster objects to any proposed assumption or assignment of the Policies without its express consent. Crum & Forster also objects to any sale of claims against it that disregards its rights of setoff and recoupment. To the extent the Court authorizes assumption and assignment over objection, Crum & Forster objects unless the Debtor promptly cures all defaults and provides adequate assurance of future performance.

A. The Policies Are Not Assignable

13. The Policies expressly provides that they cannot be transferred without Crum & Forster's consent. As stated above, the Policies were issued to the Debtors based on a risk analysis conducted by Crum & Forster that is particular to the Debtors. Crum & Forster does not consent to any assignment at this point but is willing to consider same under the appropriate circumstances.

14. Although there is case law that permits assigning insurance rights post-loss, such as in various asbestos bankruptcy cases, prior to such loss, insurance policies may not be assigned

without the insurer's consent since such assignment would allow the bankruptcy to improperly increase the debtor's rights and the insurer's risk.

15. Absent consent by an insurer, state law bars assignment of an insurance policy by the insured to a third party pre-loss. *See* 3 *Couch of Insurance* § 35:8 ("[T]he great majority of courts adhere to the rule that general stipulation in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss[.]"; *Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co.*, No. CV 14-1420-RGA, 2015 WL 6675537, at *4 (D. Del. Nov. 2, 2015) ("Pre-loss non-assignment provisions are nevertheless enforced because the general preference for free alienability is overcome by insurers' legitimate interests in protecting themselves against risks they did not agree to cover.")

16. The pre- and post-loss distinction is essential as it changes the scope of the contractual relationship between insurer and insured. *Christiana Care*, 2015 WL 6675537 at *4. As the *Christiana Care* court explained, "[p]rior to a covered loss, the insurer bears a risk dependent upon the identity of the insured and has priced the policy commensurate with its assessment of the risk."

17. Moreover, the insurance policies can be equated to a personal service contract. *See, e.g. Matter of Taylor*, 103 B.R. 511, 516 FN 3 (D.N.J. 1989), *aff'd in part, appeal dismissed in part*, 913 F.2d 102 (3d Cir. 1990) ("Under a personal service contract, the receiving party relies on the personality of a specific individual for the completion of performance. Because the contract is premised on the artistic skill or unique abilities of a specific party, the duty to perform under the contract generally is not assignable. . . . In this case, therefore, the trustee is precluded by nonbankruptcy law from assuming or assigning the debtor's personal service contracts."); *see also In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 28-29 (1st Cir. 1984) (concluding that the limitations

of section 365(c)(1) are not limited to an individual's personal service contracts); *In re Braniff Airways, Inc.*, 700 F.2d 935, 943 (5th Cir. 1983) (same).

18. Crum & Forster carefully weighed and measured the risks of the Debtor Benson Hill and its business prior to issuing the Policies. These contain specific premiums, coverage, limits, etc., all precisely tailored to the named insured.

19. In addition, as outlined above, there are material outstanding obligations of both the Debtor and Crum & Forster under the Policies, such that the Policies constitutes an executory contract, as acknowledged by the Debtor's Schedules.

20. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

21. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled by section 365(c). *See* § 365(f)(1) ("Except as provided in subsections (b) and (c) of this section[.]"); *see also In re Trump Entertainment Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c)").

22. Section 365(c), in turn, provides, in relevant part, that a debtor may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if–

    (1)    (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

           (B) such party does not consent to such assumption or assignment; or

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor [.]

23. Therefore, under section 365(c)(1): if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the ... contract to a third party, *i.e.,* someone "other than the debtor or the debtor in possession," then [the debtor], as the debtor in possession, cannot assume that contract. This provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment. *Matter of West Electronics Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Entm't Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is "subject to a legal prohibition against assignment" to a third party and the non-debtor party to the contract does not consent to assignment.").

24. Accordingly, Crum & Forster objects to any assignment of the Policies without its consent. Forcing such assignment imposes risks Crum & Forster never agreed to assume.

B. <u>Claims Against the Debtor are Subject to Setoff and Recoupment Rights</u>

25. To the extent any claim is asserted against Crum & Forster it has setoff rights as to any funds it is holding and/or any collateral. These setoff and recoupment rights can arise where the Debtor has unpaid claim against Crum & Forster or owes amounts to Crum & Forster that fall under the deductible. Moreover, if Crum & Forster pays a claim, it may subrogate to the rights of any such payee, including any setoff or recoupment rights it may have against the Debtor.

26. Recoupment is a creditor's right, long recognized in bankruptcy proceedings that is not in the nature of a mere lien, but is a defense to a claim for payment. *Lee v. Schweiker,* 739 F. 2d 870, 875 (3d Cir. 1984) ("[W]here the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim . . . ."). In other

6

words, the recoupment is used to determine the proper liability on amounts owed. *Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993). Setoff "gives a creditor the right 'to offset a mutual debt owing by such creditor to the debtor,' provided that both debts arose before commencement of the bankruptcy action and are in fact mutual." *In re University Medical Center,* 973 F.2d 1065, 1079 (3d Cir. 1992) (*quoting in re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990). While setoff rights are defined and delineated by applicable non-bankruptcy law, the Bankruptcy Code recognizes and preserves these rights: "11 U.S.C. § 553(a) provides that with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001) ("It is impossible for us to ignore the clear statement of § 553 that 'this title . . . does not affect any right of a creditor to offset . . . .'") (internal quotation source omitted). Because in a sale of assets, a buyer's interest is wholly derivative of a debtor's interest, any successful buyer would have no greater right to payment than the Debtor. Put simply, the Debtor cannot assign greater rights than it possesses.

    C.    <u>All Cure Obligations Must Be Satisfied if the Debtor is Permitted to Assign the Policies</u>

27.    As executory contracts, to the extent the Policies are assumed and assigned, all amounts currently owed would have to be cured, including unpaid premiums, deductibles, fees, and costs. Additionally, Crum & Forster must be provided adequate protection of future performance.

28.    Crum & Froster will not be able to calculate the full amount of these cure obligations until the effective date of the Sale closing. However, Crum & Forster objects to the Notice of the Possible Assumption and Assignment which incorrectly lists the cure amount for both Policies as $0.00


words, the recoupment is used to determine the proper liability on amounts owed. *Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993). Setoff "gives a creditor the right 'to offset a mutual debt owing by such creditor to the debtor,' provided that both debts arose before commencement of the bankruptcy action and are in fact mutual." *In re University Medical Center,* 973 F.2d 1065, 1079 (3d Cir. 1992) (*quoting in re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990)). While setoff rights are defined and delineated by applicable non-bankruptcy law, the Bankruptcy Code recognizes and preserves these rights: "11 U.S.C. § 553(a) provides that with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995); *see also In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001) ("It is impossible for us to ignore the clear statement of § 553 that 'this title . . . does not affect any right of a creditor to offset . . . .'") (internal quotation source omitted). Because in a sale of assets, a buyer's interest is wholly derivative of a debtor's interest, any successful buyer would have no greater right to payment than the Debtor. Put simply, the Debtor cannot assign greater rights than it possesses.

    C.    <u>All Cure Obligations Must Be Satisfied if the Debtor is Permitted to Assign the Policies</u>

27.    As executory contracts, to the extent the Policies are assumed and assigned, all amounts currently owed would have to be cured, including unpaid premiums, deductibles, fees, and costs. Additionally, Crum & Forster must be provided adequate protection of future performance.

28.    Crum & Froster will not be able to calculate the full amount of these cure obligations until the effective date of the Sale closing. However, Crum & Forster objects to the Notice of the Possible Assumption and Assignment which incorrectly lists the cure amount for both Policies as $0.00

**Reservation of Rights**

29. The submission of this Objection by Crum & Forster is not intended as, and shall not be construed as (a) Crum & Forster's admission of any liability or waiver of any defenses or limitation of any rights of Crum & Forster with respect to its rights under the Policies; (b) an election of remedy; or (c) consent to the determination of the Debtors' liability to Crum & Forster by any particular court, including, without limitation, the Bankruptcy Court.

30. Crum & Forster reserves the right to raise any arguments raised by any other party in their pleadings at the sale hearing.

31. Crum & Forster expressly reserves, and does not waive, any and all rights, claims, defenses, limitations, and/or exclusions in connection with its and the Debtors' rights and obligations under the Policy, applicable law, or otherwise. Crum & Forster further reserves all rights to assert any and all such rights, claims defenses, limitations and/or exclusions in any appropriate manner or forum whatsoever (including, without limitation, any of its rights to have any non-core matter relating to the interpretation of its contractual rights and Debtors' contractual obligations adjudicated by the United States District Court).

32. Crum & Forster further reserves all of its rights to raise any issues contained in its Objection and any other related issues in any procedurally-appropriate contested matter and/or adversary proceeding, including, without limitation, (i) a separate adversary proceeding requesting any appropriate declaratory and/or injunctive relief, (ii) or an objection to any subsequent motion seeking approval of an asset sale to any prospective asset purchaser with respect to any contractual rights that may be adversely affected by a sale motion or the confirmation of any plan.

WHEREFORE, for the reasons set forth herein, Crum & Forster respectfully objects to the Sale Motion unless the Order approving the Sale of the Assets include language addressing each of the following issues:

(a) the Policies may not be sold or transferred without the consent of Crum & Forster,

(b) to the extent that the sale of Debtor's assets includes claims against Crum & Forster, such claims shall be subject to any recoupment and/or setoff rights of Crum & Forster, and

(c) to the extent that the sale of the Debtor's assets includes the Policies, the Debtor shall cure all outstanding obligations, which shall be determined as of the effective date of the Sale closing, and further provide adequate assurance of future performance satisfactory to Crum & Forster.

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Dated: May 9, 2025

*/s/ Gaston P. Loomis*
Gary D. Bressler, Esq.
Gaston P. Loomis, Esq.
300 Delaware Avenue
Suite 1014
Wilmington, Delaware 19801
302-300-44510
gbressler@mdmc-law.com
gloomis@mdmc-law.com

*Counsel to Crum & Forster Specialty Insurance Company*